IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NETWORK MANAGING SOLUTIONS, LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-295-RGA |
| AT&T MOBILITY LLC, | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |
| NETWORK MANAGING SOLUTIONS, LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 16-296-RGA |
| SPRINT CORPORATION and SPRINT SPECTRUM L.P., | ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |
| NETWORK MANAGING SOLUTIONS, LLC | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-297-RGA |
| T-MOBILE USA, INC., | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |
| NETWORK MANAGING SOLUTIONS, LLC | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-298-RGA |
| UNITED STATES CELLULAR CORPORATION, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) ) | |

NETWORK MANAGING           )
SOLUTIONS, LLC             )
                           )
    Plaintiff,             )
                           )
    v.                     )    C.A. No. 16-299-RGA
                           )
CELLCO PARTNERSHIP d/b/a VERIZON  )
WIRELESS,                  )
                           )    JURY TRIAL DEMANDED
    Defendant.             )
                           )

---

## REPLY IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

Shanti M. Katona (No. 5352)
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
302-252-0924
skatona@polsinelli.com

OF COUNSEL:
David E. Finkelson
Justin R. Lowery
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-4030
(804) 775-1000
dfinkelson@mcguirewoods.com
jlowery@mcguirewoods.com

Jason W. Cook
MCGUIREWOODS LLP
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201
(214) 932-6400
*Attorneys for Defendant*
*Sprint Corporation and*
*Sprint Spectrum L.P.*

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com

OF COUNSEL:
L. Norwood Jameson
Matthew S. Yungwirth
S. Neil Anderson
DUANE MORRIS LLP
1075 Peachtree St. NE, Suite 2000
Atlanta, GA 30309
(404) 253-6900

Joseph A. Powers
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1842

Christopher J. Tyson
Justus L. Getty
DUANE MORRIS LLP
505 9th Street NW, Suite 1000
Washington, DC 20004
(202) 776-7804
*Attorneys for Defendant*
*AT&T Mobility LLC*

Benjamin J. Schladweiler (No. 4601)
GREENBERG TRAURIG LLP
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7394
schladweilerb@gtlaw.com

OF COUNSEL:
Joshua C. Krumholz
Jacob K. Baron
Mark T. Goracke
Jacob W. S. Schneider
HOLLAND & KNIGHT llp
10 St. James Avenue
11th Floor
Boston, MA  02116
(617) 523-2700
*Attorneys for Defendants*
*T-Mobile USA, Inc. and*
*Cellco Partnership d/b/a Verizon Wireless*

Steven J. Fineman (No. 4025)
Katharine L. Mowery (No. 5629)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
mowery@rlf.com

OF COUNSEL:
Douglas I. Lewis
Paul E. Veith
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

John P. Wisse
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
jwisse@sidley.com
*Attorneys for Defendant United States*
*Cellular Corporation*

## TABLE OF CONTENTS

**Page**

I.      NMS'S MISUNDERSTANDING OF THE *ALICE* FRAMEWORK ................................1

II.     THE '099 PATENT ....................................................................................................3

    A.      NMS Mischaracterizes the '099 Patent Claims ...............................................3

    B.      The Actual '099 Patent Claims Are Not Patent Eligible .............................4

III.    THE '968 PATENT ....................................................................................................6

    A.      NMS Mischaracterizes the '968 Patent Claims ...............................................6

    B.      The Actual '968 Patent Claims Are Not Patent Eligible .............................7

IV.     THE '213 PATENT AND '688 PATENT CLAIMS ARE NOT PATENT ELIGIBLE .....8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)..............................................................1-4

*Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) ........................................................3

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) ................................2

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ...............................................................................................................................10

*D&M Holdings Inc. v. Sonos, Inc.*, Case No. 16-cv-141-RGA, 2017 U.S. Dist. LEXIS 58790 (D. Del. Apr. 18, 2017)..................................................................1-2

*DDR Holdings LLC v. Hotels.com*, 773 F.3d 1245 (Fed. Cir. 2014)............................................10

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ..........................................................6

*Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2017) .................8-10

*Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315 (Fed. Cir. 2017) .................5, 8

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) ......................2, 6

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ...........................3

*OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) .........................................7

*Parker v. Flook*, 437 U.S. 584 (1978)..............................................................................................2

*In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) ...............................6, 8-10

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329 (Fed. Cir. 2017)...........................................................................................................2

**Statutes**

35 U.S.C. § 101 ...........................................................................................................1-2, 6

NMS's Response ("Response" or "Resp.") to Defendants' Motion for Judgment on the Pleadings against NMS's Complaint[1] ("Motion" or "Mtn.") is premised on (i) a fundamental misunderstanding of the *Alice* framework and (ii) a mischaracterization of the asserted claims. NMS's Response starts with a five-page "Legal Standard" section that is, at best, an academic discussion focused more on what NMS believes the § 101 law should be, rather than capturing the true *Alice* two-step inquiry. Then, when NMS finally addresses Defendants' application of *Alice* to the asserted claims, NMS disregards controlling precedent by focusing on unclaimed subject matter, rather than the actual claims at issue. NMS's arguments do not refute Defendants' application of *Alice*, which compels a finding that the patents claim ineligible subject matter.

## I.      NMS'S MISUNDERSTANDING OF THE *ALICE* FRAMEWORK

NMS's arguments are premised on **multiple** mischaracterizations of the Alice framework.

First, despite NMS's repeated effort to re-cast the *Alice* inquiry, into one that might help its cause, the *Alice* inquiry is not whether: patents "disclose substantial and novel alterations" to existing technologies (Resp., 1), or the claims "accomplish something tangible."[2] (Resp., 7, 14, 18). Rather, the two-step inquiry is whether the patent claims: (1) are directed to an abstract idea and, if so, (2) whether the claims survive by claiming an inventive concept that amounts to "significantly more" than the abstract idea itself. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Accordingly, this is the two-step inquiry set forth in the Motion.

---

[1] Since the Motion was filed, NMS moved to amend its Complaint for a fifth time. *See* Case No. 16-cv-295, D.I. 131. NMS's proposed amendments do not impact the present Motion, except to confirm Defendants' positions, as discussed below.

[2] NMS's repeated reliance upon *D&M Holdings Inc. v. Sonos, Inc.* (Resp. 7, 14, 18) is misplaced. In *D&M Holdings*, the claims-at-issue "represent[ed] a **specific improvement** in a computer's capabilities; specifically . . . an improvement in resuming interrupted downloads[.]" Case No. 16-cv-141-RGA, 2017 U.S. Dist. LEXIS 58790, *20 (D. Del. Apr. 18, 2017) (emphasis added). As discussed below and in the Motion (Mtn., 5-7, 11-12, 18-19), the Patents-in-Suit do not claim a specific improvement in a computer's capabilities.

Second, NMS argues, with no case law support, that because its claims do not preempt all activity in the technical field, they are not directed to an abstract idea, (Resp., 4, 7-8, 12-14, 17-18), and then suggests that step one of *Alice* should be re-written to say: patent claims are directed to an abstract idea only if the patent "**directly claims** or **substantially monopolizes** that [abstract idea]." (Resp., n.2). But, the Supreme Court in *Parker v. Flook,* 437 U.S. 584 (1978) rejected the similar argument that claims are eligible as long as they do not "wholly pre-empt" an abstract idea. *Id. at* 589-90. Defendants are aware of no cases supporting NMS's effort to change the law.

While "preemption may signal patent ineligible subject matter, the absence of complete preemption," as NMS argues for each Patent-in-Suit, "does not demonstrate patent eligibility." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015). Indeed, "preemption concerns are fully addressed and made moot" where, as is the case here, "a patent's claims are deemed only to disclose patent ineligible subject matter." (*Id.*) Because "questions on preemption are inherent in and resolved by the [two-part *Alice*] § 101 analysis[,]" there is no need to engage in a separate preemption analysis, which is a centerpiece of NMS's arguments.[3] (*Id.*)

Third, NMS suggests that the universe of abstract ideas is limited to mathematical formulas and commercial practices. (Resp., 6). But "[t]he Supreme Court and [the Federal Circuit] have held that a **wide variety** of well-known and other activities constitute abstract ideas." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (emphasis added) (collecting cases). Indeed, the Supreme Court in *Alice* expressly rejected NMS's proposed constraints, noting that "we need not labor to delimit the precise contours of the 'abstract ideas'

---

[3] This Court and the Federal Circuit have recently reaffirmed the *Ariosa* panel's holding regarding preemption. *See e.g., Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017); *D&M Holdings,* 2017 U.S. Dist. LEXIS 58790 at *16.

category." *Alice*, 134 S. Ct. at 2357.  The universe of abstract ideas is large, and those abstract ideas that Defendants identify in their Motion are not excluded.

Fourth, NMS complains that Defendants overgeneralize the claims.  But *Alice* step 1 mandates that claims be "considered in their entirety" to determine "their character as a whole." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  While it is true that "[a]n abstract idea can generally be described at different levels of abstraction[,]" for each patent, Defendants explain how they have arrived at the abstract idea.  (Mtn., 3-5, 9-11, 15-17; *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016).)  The specific claim limitations, as well as the unclaimed subject matter, which NMS raises in its Response, do not change the abstract character of the claims, as Defendants describe below.

## II.     THE '099 PATENT

### A.     NMS Mischaracterizes the '099 Patent Claims

Regarding the '099 Patent, NMS focuses on unclaimed subject matter and suggests that the claims are far narrower than its own positions in its Complaint to argue that the claims "provide a concrete solution to a technical problem, not a repackaging of older technology."  (Resp., 7). NMS's attempt to recast the claims, however, is at odds with the '099 Patent.

For example, Defendants explained in their Motion that checking a subscriber's identification is akin to the centuries old practice of an official at a post office inspecting mail dropped off at the post office by a sender to see if it was sent by or addressed to a target.  (Mtn., 5).  In response, NMS argues that the "checking the identification of a subscriber accessing the [communications] device" claim element "finds no counterpart in prior systems."  *Id.*[4]  To the

---

[4] NMS's suggestion that the claims require that "the transmission of messages is triggered by a user accessing the communication device" is belied by its own admissions in its Response and Complaint.  (Resp., 7; D.I. 74, 14).

contrary, NMS readily acknowledged this similarity when it broadly alleged in its Complaint that this element is met when "the identity of correspondents involved in a communication are checked to see if a target is involved as, for example, a sender or receiver." D.I. 74, 14.[5]  According to NMS's broad interpretation of the claim element, prior art mail inspection is certainly a counterpart prior art system.

As a second example, NMS argues that the claims are limited to "**electronic** messages" such as "text messages between cellular phones[;]" and the claims exclude "circuit-switched voice communications." (Resp., 8-9).  Notably absent from NMS's Response, however, is any shred of support for this claim interpretation.  (*Id*.).  Indeed, the patent's preferred embodiment describes the storing and transmitting of **voice** messages in a **voice** mailbox.  '099 Patent, 1:29-33, 4:19-21, 5:4-9.[6]  Again, NMS's attempt to twist the '099 Patent to sidestep *Alice* is misplaced.

## B.    The Actual '099 Patent Claims Are Not Patent Eligible

The '099 Patent does not claim to have invented storing messages in, or transmitting messages from, a digital mailbox (like the voice mailbox in the preferred embodiment).  (*See* Mtn., 4 *citing* '099 Patent, 2:51-53, 2:58-60, 4:21-26).  It could not because even a casual user of a voicemail box in the early 1990s knew that voice messages are stored in a mailbox, a user gets a notification (*e.g.* a red light) when a message is stored, and the message is transmitted from the mailbox when a user retrieves and listens to it.

Likewise, the claimed invention of the '099 Patent is not a technical improvement to the function of these conventional mailboxes.  The claims simply recite carrying out a longstanding

---

[5]  NMS repeats the allegations in its requested Fifth Amended Complaint. (D.I. 131, Ex. A, 15).

[6]  While NMS is bound by its arguments limiting the scope of its infringement contentions to electronic messages, as opposed to voicemail, the Court should consider the actual specification of the '099 Patent as part of its *Alice* analysis.

practice (selectively intercepting and forwarding messages) using admittedly conventional components and routine programming. (Mtn., 5 (detailing the longstanding practice), 8 (*citing* '099 Patent, 2:63-66, 3:18-21, 3:44-54, 6:52)). The '099 Patent does not disclose or claim any innovative structure for **how** to achieve the recited end results of "check[ing] an identification of a subscriber," "stor[ing] information indicating whether a subscriber is to be monitored," and "permit[ting] a message . . . to be transmitted . . .[.]"[7]. The specification itself acknowledges that conventional hardware and routine programming achieved these end results and does not explain how, nor does the patent claim a new way, to improve this hardware or programming. ('099 Patent, 2:63-66, 3:18-21, 3:44-54, 6:52). NMS does not dispute this fact; rather it attempts to diminish the effect of the claims' use of functional language by mischaracterizing Federal Circuit precedent. (Resp., 8; *cf. Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1331-32 (Fed. Cir. 2017) ("Without an explanation of the 'mechanism' for 'how the result is accomplished,' this purported feature of the invention cannot supply an inventive concept.") (internal citations omitted)). Consequently, the claimed invention of the '099 Patent is a quintessential abstract idea.

NMS contends the '099 Patent is directed to a specific, technical improvement in digital mailboxes that enables stored "text messages between cellular phones" to be transmitted to a monitoring user for the very first time (Resp., 10-11). But NMS has not identified **anything** in the patent describing an improvement to hardware or programming used to achieve this result. NMS has not done so because there is no such description in the '099 Patent. The '099 Patent leaves

---

[7] The '099 Patent also does not disclose or claim any innovative structure for **how** to achieve the end result of Claim 9 (an indication that another subscriber accesses a message addressed to a target is forwarded to a monitoring user). Rather, the patent describes that the same routine programming to "permit a message . . . to be transmitted . . ." is used to achieve this end result. ('099 Patent, 3:44-54). Officials tracking who, how, and when a target's mail is picked up, and forwarding that information to law enforcement, is also a longstanding practice. (Mtn., 3-5).

open the critical question of **how** to achieve the claimed abstract idea, thereby suggesting it can be achieved without novel hardware or programming and by operating the conventional components in a routine manner. *In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-614 (Fed. Cir. 2016) (holding that "recited physical components" fail to provide an inventive concept when they "behave exactly as expected according to their ordinary use.") In fact, the '099 Patent describes as much. ('099 Patent, 2:63-66, 3:18-21, 3:44-54, 6:52).

Thus, like the claims held ineligible in *Intellectual Ventures I LLC v. Symantec Corp.* (838 F.3d at 1316), the '099 Patent claims are ineligible under §101 as they fail to recite something more than selectively intercepting and forwarding messages.[8]

## III.    THE '968 PATENT

### A.    NMS Mischaracterizes the '968 Patent Claims

Regarding the '968 Patent, NMS similarly sidesteps the actual claim language and focuses on unclaimed subject matter. The claims in the '968 Patent, however, are precisely what §101 is designed to exclude from patentability—an abstract idea (managers exchanging information with one another between and during work shifts) that is automated with admittedly conventional devices performing routine functions in an admittedly conventional telecommunications network.

NMS effectively concedes that a well-understood problem encountered by managers is that responsibility for completing many activities is spread across managers at different management levels and over these different managers' periods of responsibility or "shifts." (Resp., 13; *see also* Mtn., 9). NMS also effectively concedes that the long-standing solution to this problem is to record and exchange information during and between these managers' periods of responsibility. (*Id.*).

---

[8] Not only can NMS not distinguish the '099 Patent claims from those held ineligible in *Symantec*, its Response avoids altogether *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331, 1333 (Fed. Cir. 2012), which Defendants also analogized to the '099 Patent claims. (Mtn., 7).

NMS nevertheless argues that Defendants ignore "the technical environment of the claims" that NMS alleges requires "management devices . . . located at different geographical locations" "to troubleshoot a remotely located network device" and "receive the same alarm information." (Resp., 13-14, n.12). These allegedly ignored features (*e.g.*, different geographical locations) are **nowhere to be found** in the asserted '968 Patent claims. Rather, proper consideration of the **actual** claim language confirms that the claims are directed to simply automating the long-standing solution to the well-understood problem in a telecommunication network.

## B.   The Actual '968 Patent Claims Are Not Patent Eligible

The '968 Patent indisputably explains that the problem of handling alarm activities in a telecommunication network is spread across operators at management devices on different management levels and over their different periods of responsibility. ('968 Patent, 2:40-45, 1:33-45; Mtn., 9-10). The '968 Patent's claimed solution simply automates the long-standing solution to the identical problem: the operators (i) record their work during their period of responsibility with "checking attributes" and (ii) introduce a "checking function" to share this information between the associated management devices. (Mtn., 10 *citing* '968 Patent at 2:36-47, 7:11-21).

Using admittedly conventional computer elements to automate a longstanding manual process to solve a well-known problem by making it faster, or occur more frequently, quickly, or accurately is not patentable. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). NMS argues that the claimed automation differs from the longstanding manual solution "not only in speed and regularity, but in its fundamental nature." (Resp., 13). But NMS does not identify any claim element that reflects this alleged fundamental distinction. Limiting the claimed invention to a particular field of use and implementing it on admittedly conventional components performing routine functions cannot render the abstract idea fundamentally distinct nor patentable. *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1366 (Fed. Cir. 2017).

NMS does not dispute that the '968 Patent:

- acknowledges that the claimed telecommunications network, management devices at different management levels within the network, and operators interfacing with the management devices are conventional (Resp., 12-16; *see also* Mtn., 11-12.);

- acknowledges that the functions of management devices receiving alarms and storing alarms, and management device operators handling alarms for a specific period of time are routine and well understood (*Id.*); and

- fails to claim **how** the remaining claim element—a checking function with checking attributes is introduced between management devices—is performed (*Id.*; Mtn., 14)

Rather, the claims only recite that it somehow occurs as an abstract end result.

In fact, NMS's statement that "the primary innovative aspect of [the claimed] process is the introduction of a checking function which serves to keep information about alarms consistent between management devices" (Resp., 14) confirms that the claims recite an abstract end result rather than a specific technical improvement to achieve this result. Because there is no disclosure in the '968 Patent of the mechanism by which the checking function is introduced and exchanges checking attributes between management devices, such functionality can be performed with known methods, by operating the admittedly conventional devices in a routine manner. *TLI Communs.*, 823 F.3d at 613-614. Thus, NMS's argument that the '968 Patent claims include an inventive concept fails. *Erie Indemnity Co.*, 850 F.3d at 1331-32.

## IV.    THE '213 PATENT AND '688 PATENT CLAIMS ARE NOT PATENT ELIGIBLE

According to NMS, the claimed inventions in the '213 Patent and '688 Patent are "directed to solving a problem that has no analog outside the problem of alarm management in a communications system" and that "[t]he claimed solution is necessarily rooted in the technological environment of an alarm management system." (Resp., 19). However, neither the '213 nor '688 Patent claim to have invented (i) the claimed telecommunications network, agents, managers, alarms, network management centers, operation management centers, network elements, or (ii) the

claimed functions of transferring alarms both during alarm realignment and normal connectivity. (Mtn., 18, 20 *citing* '213 Patent, 1:13-67, 3:54-4:38; '688 Patent, 1:12-65, 4:54-5:38; *cf.* Resp., 18-19).   And neither the '213 nor '688 Patent claim to have invented the types of messages used to communicate alarms, including during alarm realignment.   (Mtn., 18, 20 *citing* '213 Patent, 1:49-67, 7:27-56, 8:15-18, 8:66-9:2, 9:61-64, 10:24-64, Figs. 4-8; '688 Patent, 1:48-65, 7:65-8: 24, 8:43-65).   Indeed, even NMS concedes that these messages were standardized. (Resp., 19).   This of course begs the question, what is the invention of the '213 and '688 Patents?   The abstract idea.

Moreover, NMS's own description of the problem and solution of the '213 and '688 Patents (*id*. at 17) belies its arguments.   NMS identifies that the problem that the '213 and '688 Patents were trying to solve was ensuring that a manager has an updated list of alarms from its subordinate agent after being offline for a period of time.   (Resp., 16-17; *see also* Mtn., 15).   As identified in Defendants' Motion, this same problem is encountered routinely when managers in an organization require updates from subordinates working for them after they are offline for a period of time.   (Mtn., 15).   That the updates in the '213 and '688 Patents are alarm lists, or that the managers/subordinates are generic computers, does not change the fact that the problem faced is identical.   *See Capital One Bank*, 792 F.3d at 1366; *TLI Communs.*, 823 F.3d at 611-613.

Furthermore, NMS's identification of the solution to this problem as managers "affirmatively request[ing] that agents send the managers an updated list of alarms associated with the agent" and "us[ing] that technique in connection with correlation information" does not make the solution non-abstract.   The solution characterized by NMS is akin to a partner requesting a case update from an associate in an email and the associate responding with the requested update in an email reply whose subject line links these communications together with a "RE: []."   (Mtn., 15-17).   And the additional claimed "parameterization" solution in the '213 Patent—the manager

sends a parameter to the subordinate agent specifying that the agent should only send certain alarms—is akin to a partner requesting in her email that the associate only send updates on certain case matters. (Resp., 17-18; Mtn., 16-17). Again, that the managers/subordinates are generic computers, or that the communications are standardized, and are formatted, sent, and received using routine programming, does not change the fact that the solution is abstract. *See Capital One Bank*, 792 F.3d at 1366; *TLI Communs.*, 823 F.3d at 611-613. Indeed, it just confirms it.

Finally, NMS's reliance on *DDR Holdings LLC v. Hotels.com* and *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.* is misplaced. (Resp., 19). In *DDR*, the claims solved an Internet-specific challenge and "specif[ied] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *DDR*, 773 F.3d 1245, 1258 (Fed. Cir. 2014). By contrast, the '213 and '688 Patent claims do not specify a new way to override conventional functions and instead simply employ routine functions to deliver updates faster and more cost-effectively than before. (Mtn., 17-18, 20). In *Core Wireless*, the claimed invention was an improved user interface for computing devices which provided a "specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer." *Core Wireless*, 880 F.3d 1356, 1362-1363 (Fed. Cir. 2018). By contrast, the '213 and '688 Patents apply well-established methods of communicating to admittedly generic computers employing routine and standardized functions. (*Id.*).

| Polsinelli PC | Shaw Keller LLP |
|---|---|
| */s/ Shanti M. Katona* | */s/ Andrew E. Russell* |
| Shanti M. Katona (Del. Bar No. 5352) | John W. Shaw (No. 3362) |
| 222 Delaware Avenue, Suite 1101 | Jeffrey T. Castellano (No. 4837) |
| Wilmington, DE 19801 | Andrew E. Russell (No. 5382) |
| 302-252-0924 | 1105 North Market St., 12th Floor |
| 302-252-0921 (fax) | Wilmington, DE 19801 |
| skatona@polsinelli.com | (302) 298-0700 |
| | jshaw@shawkeller.com |
| OF COUNSEL: | jcastellano@shawkeller.com |
| David E. Finkelson | arussell@shawkeller.com |
| Justin R. Lowery | |
| McGuireWoods LLP | OF COUNSEL: |
| Gateway Plaza | L. Norwood Jameson |
| 800 East Canal Street | Matthew S. Yungwirth |
| Richmond, VA 23219-4030 | S. Neil Anderson |
| (804) 775-1000 | Duane Morris LLP |
| | 1075 Peachtree St. NE, Suite 2000 |
| Jason W. Cook | Atlanta, GA 30309 |
| McGuireWoods LLP | (404) 253-6900 |
| 2000 McKinney Avenue | |
| Suite 1400 | Joseph A. Powers |
| Dallas, TX 75201 | Duane Morris LLP |
| (214) 932-6400 | 30 South 17th Street |
| *Attorneys for Defendant* | Philadelphia, PA 19103 |
| *Sprint Corporation and* | (215) 979-1842 |
| *Sprint Spectrum L.P.* | |
| | Christopher J. Tyson |
| | Justus L. Getty |
| | Duane Morris LLP |
| | 505 9th Street NW, Suite 1000 |
| | Washington, DC 20004 |
| | (202) 776-7804 |
| | *Attorneys for Defendant* |
| | *AT&T Mobility LLC* |

GREENBERG TRAURIG LLP

/s/ Benjamin J. Schladweiler
Benjamin J. Schladweiler (No. 4601)
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
(302) 661-7394
schladweilerb@gtlaw.com

OF COUNSEL:
Joshua C. Krumholz
Jacob K. Baron
Mark T. Goracke
Jacob W. S. Schneider
HOLLAND & KNIGHT LLP
10 St. James Avenue
11th Floor
Boston, MA  02116
(617) 523-2700
*Attorneys for Defendants*
*T-Mobile USA, Inc. and*
*Cellco Partnership d/b/a Verizon Wireless*


Dated:  May 15, 2018

RICHARDS, LAYTON & FINGER, P.A.

/s/ Katharine L. Mowery
Steven J. Fineman (No. 4025)
Katharine L. Mowery (No. 5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
mowery@rlf.com

OF COUNSEL:
Douglas I. Lewis
Paul E. Veith
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

John P. Wisse
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
*Attorneys for Defendant United States*
*Cellular Corporation*